RCH/CMM:SKW/AT/EWS
F. #2024R00298

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
* JUNE 12, 2026 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ANTHONY J. CARONE,
FRANK V. CARONE,
CRYSTAL CHEN and
YAN PO ZHU,
    also known as "Andy Zhu,"

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____26-CR-177_____
(T. 18, U.S.C., §§ 371, 666(a)(1)(B),
666(a)(2), 981(a)(1)(C), 982(a)(1),
982(b)(1), 1343, 1346, 1349, 1512(c)(2),
1952(a)(3)(A), 1956(h), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 26,
U.S.C., § 7206(1); T. 28, U.S.C.,
§ 2461(c))

Judge Kiyo A. Matsumoto
Magistrate Judge James R. Cho

THE GRAND JURY CHARGES:

## INTRODUCTION TO ALL COUNTS

At all times relevant to this Indictment, unless otherwise indicated:

I.    Relevant Individuals and Entities

        1.    The defendant ANTHONY J. CARONE was a resident of Queens County, New York, and an attorney duly admitted to practice law in New York State. A. CARONE was the brother of the defendant FRANK V. CARONE.

        2.    The defendant FRANK V. CARONE was a resident of Kings County, New York and Palm Beach County, Florida, and an attorney duly admitted to practice law in New York State. On or about January 1, 2022, F. CARONE was appointed Chief of Staff to the Mayor of New York City ("Chief of Staff"). F. CARONE resigned from that position on or about December 31, 2022.

3.    The defendant CRYSTAL CHEN was a Chinese national who resided in Nassau County, New York.  CHEN worked as the defendant YAN PO ZHU's, also known as "Andy Zhu," business manager at, among other places, the Microtel Inn by Wyndham (the "Microtel"), a 75-room hotel located at 29-12 40th Avenue in Queens County, New York.

4.    The defendant YAN PO ZHU, also known as "Andy Zhu," was a Chinese national who resided in Nassau County, New York.  ZHU owned and operated the Microtel. ZHU exercised control over the Microtel through one or more New York limited liability companies, including Holding Company #1 and Holding Company #2, entities the identities of which are known to the Grand Jury.

5.    Law Firm #1, an entity the identity of which is known to the Grand Jury, was a New York professional service corporation engaged in the provision of legal and consulting services, with a principal place of business in Kings County, New York.  The defendant FRANK V. CARONE owned and controlled Law Firm #1.

6.    Law Firm #2, an entity the identity of which is known to the Grand Jury, was a New York professional service limited liability company engaged in the provision of legal services, with a principal place of business in Kings County, New York.  The defendant ANTHONY J. CARONE was a partner of Law Firm #2.  In or about May 2015, A. CARONE opened a bank account in the name of Law Firm #2 (the "Law Firm #2 Account"), which A. CARONE controlled.  The Law Firm #2 Account remained dormant from its inception in May 2015 until approximately January 2022, when the defendant FRANK V. CARONE was appointed Chief of Staff.

7.    City Official #1, an individual whose identity is known to the Grand Jury, was the Commissioner of the New York City Department of Social Services ("DSS").  In

approximately 2023, City Official #1 resigned from DSS and became employed at a New York business corporation providing consulting services that was owned and operated by the defendant FRANK V. CARONE.

8.     City Official #2, an individual whose identity is known to the Grand Jury, was the First Deputy Commissioner for the New York City Department of Homeless Services ("DHS"), a subagency within DSS.   City Official #2 reported to City Official #1.

9.     City Official #3, an individual whose identity is known to the Grand Jury, was the Associate Commissioner for DHS.   City Official #3 reported to City Official #2.

10.     Consultant #1, an individual whose identity is known to the Grand Jury, was a consultant.   In 2022, the defendants YAN PO ZHU and CRYSTAL CHEN retained Consultant #1 to apply for an emergency shelter contract from New York City on behalf of the Microtel.

II.     The 2022 New York City Migrant Crisis

11.     In 2022, New York City ("NYC" or the "City") experienced an unprecedented influx of migrant asylum seekers.   NYC was a "right to shelter" city, meaning the City was legally required to provide shelter to all homeless individuals who sought it. Because the volume of migrant asylum seekers needing housing outpaced NYC's existing shelter system, the City instituted a process for contracting with local hotels to house migrant asylum seekers (the "Emergency Shelter Contracts").

12.     In sum and substance, in the Emergency Shelter Contracts, the City agreed to rent entire hotels for one year or more, turn over operational control to third-party organizations, and utilize the spaces as emergency shelters to house migrant asylum seekers.   To identify and evaluate sites for potential Emergency Shelter Contracts, employees from DSS and

its constituent subagencies, the Human Resources Administration and DHS, solicited and reviewed proposals from local hotels.   Following its own due diligence, DSS recommended that the City enter into Emergency Shelter Contracts with certain local hotels.

13.    In order to fund DSS services, NYC received approximately $1.8 billion of federal grant money in 2022 and approximately $2.5 billion of federal grant money in 2023.

III.    The Criminal Scheme

14.    In or about and between June 2022 and December 2023, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU devised and executed a scheme to exploit the City's migrant crisis for profit.   Specifically, in his official capacity as Chief of Staff, F. CARONE agreed to accept a series of bribe payments from ZHU and CHEN through A. CARONE.   In exchange, F. CARONE agreed to steer a multimillion-dollar Emergency Shelter Contract to the Microtel owned by ZHU and managed by CHEN.   To conceal the criminal nature of the scheme, ZHU directed the bribe payments to the Law Firm #2 Account controlled by A. CARONE.   A. CARONE then caused those funds to be disbursed for F. CARONE's personal benefit in two ways: (1) by paying F. CARONE's personal credit card bills; and (2) by transferring funds to a bank account for Law Firm #1, of which F. CARONE was the sole beneficial owner.   In total, ZHU and CHEN paid approximately $120,000 to F. CARONE in exchange for an Emergency Shelter Contract for the Microtel, which was laundered through the Law Firm #2 Account by A. CARONE and his co-defendants.

A.    Initial Efforts to Obtain an Emergency Shelter Contract for the Microtel

15.    On or about December 29, 2021, the defendant FRANK V. CARONE announced that he was leaving the private sector to accept an appointment as Chief of Staff. Until that time, F. CARONE had provided legal and consulting services through Law Firm #1 and through a national law firm based in Kings County, New York and Nassau County, New York.   F. CARONE assumed the position of Chief of Staff in or around January 2022.

16.    Beginning in 2022, the defendants YAN PO ZHU and CRYSTAL CHEN tried to obtain an Emergency Shelter Contract for the Microtel.   Initially, ZHU and CHEN hired Consultant #1, a consultant with experience navigating City government, to assist the Microtel in obtaining an Emergency Shelter Contract.   Despite Consultant #1 making efforts on behalf of ZHU and CHEN, the Microtel was not awarded an Emergency Shelter Contract.   At a meeting held on or about June 14, 2022, DSS officials informed CHEN that the Microtel was not a viable location for an Emergency Shelter Contract.   DSS officials reached this conclusion in part due to the Microtel's location in Long Island City, Queens.   Notably, by this time, a large number of hotels in Long Island City, Queens had already received shelter contracts, drawing sustained resistance from residents and community leaders.

17.    As the defendants YAN PO ZHU and CRYSTAL CHEN's efforts to secure an Emergency Shelter Contract through Consultant #1 were stalling, ZHU leveraged his burgeoning personal relationship with the defendant FRANK V. CARONE.   As depicted below, for example, on or about June 3, 2022, ZHU and CARONE socialized at ZHU's Nassau County residence:

 

18.     That evening, the defendant YAN PO ZHU solicited the defendant FRANK V. CARONE's assistance in obtaining an Emergency Shelter Contract for the Microtel. In a text message sent that evening, for example, ZHU provided details about the Microtel to F. CARONE: "Microtel LIC 29-12 40th Avenue, LIC 75 rooms."   Several days later, on or about June 6, 2022, ZHU and F. CARONE exchanged the following text messages:

> ZHU:   who I need contact with?
>
> F. CARONE:   About?
>
> ZHU:   regarding approval of my hotel (29-12 40th Avenue (LIC) for the shelter program.   Who should I contact to
>
> F. CARONE:   Ok standby

19.     On or about June 15, 2022, after learning from DSS officials that the Microtel had been rejected for an Emergency Shelter Contract, the defendant CRYSTAL CHEN texted Consultant #1 that "the location is a no currently."   Nonetheless, CHEN told Consultant #1 that ZHU "is also speaking to someone else in the Mayor's office to see if we have another chance" for the Microtel to obtain an Emergency Shelter Contract.   As noted above, since June 3, 2022, Zhu discussed the Emergency Shelter Contract with the defendant FRANK V. CARONE.

7

B.    The Defendant FRANK V. CARONE's Intervention on the Microtel's Behalf

20.    Following DSS's rejection of the Microtel for an Emergency Shelter Contract on or about June 14, 2022, the defendant FRANK V. CARONE used his official position to intercede on the Microtel's behalf.   Among other things, in his official capacity as Chief of Staff, F. CARONE directed City Official #1, then the DSS Commissioner, to reconsider the Microtel for an Emergency Shelter Contract.   Despite DSS's prior independent assessment that the Microtel was not a suitable location for a temporary shelter, due to F. CARONE's directive, City Official #1 did, in fact, cause DSS officials to reconsider the agency's decision.

21.    On or about July 12, 2022, City Official #2 sent an email to DSS staff asking whether the Microtel's address "ring[s] a bell for anyone" because City Official #1 had begun "asking me about it."   Consistent with DSS's prior rejection, City Official #3 responded that "[t]his is a proposed hotel conversion that has been brought to us many times . . . We have consistently told them no because it is directly next to [a different] shelter."

22.    Around this same time, the defendants FRANK V. CARONE, ANTHONY J. CARONE, and YAN PO ZHU socialized frequently.   As depicted below, for example, on or about August 13, 2022, F. CARONE and A. CARONE attended a gathering at ZHU's Nassau County residence:



8

23.     The defendant YAN PO ZHU continued soliciting the defendant FRANK V. CARONE's assistance in obtaining an Emergency Shelter Contract for the Microtel.   On or about September 19, 2022, for example, ZHU and F. CARONE exchanged the following text messages:

> ZHU:     Hi Frank, hope all is well! We are interested in the immigrant emergency program. It would be helpful for my hotel if we can get at a one year program to start right away, and we can have time to work on long term programs. Can you please help me look into it? Thank you so much!
>
> F. CARONE:     What is address?
>
> ZHU:     29-12 40 Ave Long Island city 11101
>
>          Thank you my big guy

24.     Approximately three days after that exchange, on or about September 22, 2022, the defendant FRANK V. CARONE spoke on the phone with City Official #1.   One minute after that call ended, City Official #1 called City Official #2.   Following that phone call, City Official #2 sent an email to DSS staff with the subject line, "Address from [City Official #1]."   In substance and in part, that email directed DSS staff to "take a look" at the Microtel and provided the address of the hotel.   Referring to the ongoing community resistance to additional Emergency Shelter Contracts in Long Island City, City Official #2 wrote that the Microtel was located in "LIC (I know)."   In that email, City Official #2 identified the Microtel's point of contact as the defendant CRYSTAL CHEN.

25.     Two days later, on or about September 24, 2022, the defendants FRANK V. CARONE and YAN PO ZHU socialized at ZHU's Nassau County residence, as shown in the photograph below:



26.     Two days after that social event, on or about September 26, 2022, the defendant YAN PO ZHU continued to solicit the defendant FRANK V. CARONE's assistance in obtaining an Emergency Shelter Contract for the Microtel.   In a text message that contained the Microtel's address, ZHU wrote, "My brother 29-12 40 Ave please help me get done we need to refinance."

27.     On or about September 27, 2022, the defendant ANTHONY J. CARONE texted the defendant YAN PO ZHU "I want to talk to you about LIC," referring to ZHU's efforts to obtain an Emergency Shelter Contract for the Microtel.   The following day, on or about September 28, 2022, A. CARONE and ZHU met at a social club in Manhattan.   Later that evening, the defendant FRANK V. CARONE and City Official #1 also met at the same social club.   That same day, despite DSS's repeated rejection of the Microtel for an Emergency Shelter Contract, the defendant CRYSTAL CHEN texted A. CARONE to confirm ZHU's understanding that the Microtel "was submitted yesterday," which was the same day that ZHU texted F. CARONE seeking his assistance in obtaining an Emergency Shelter Contract for the Microtel.

28.     A few days later, on or about October 1, 2022, the defendant YAN PO ZHU met with the defendant FRANK V. CARONE at F. CARONE's home in Kings County, New York.   Following this meeting, ZHU and the defendant CRYSTAL CHEN began making a

series of monthly payments to F. CARONE through the Law Firm #2 Account operated by the defendant ANTHONY J. CARONE.

C.    The Consummation of the Bribery Scheme

29.    On or about October 4, 2022, City Official #1 texted the defendant ANTHONY J. CARONE to reiterate that, given the concentration of hotels already awarded Emergency Shelter Contracts in Long Island City and continued community opposition, DSS had been focused on locating hotels in "places other than LIC" to operate as emergency shelters. Despite this message to A. CARONE, City Official #1 nevertheless advised subordinate officials at DSS to award an Emergency Shelter Contract to the Microtel.  As discussed below, the contract award was the result of the defendant FRANK V. CARONE's directive to City Official #1 to consider the Microtel for an Emergency Shelter Contract.

30.    On or about October 4, 2022, in response to overtures by City Official #1, City Official #2 sent another email to DHS staff concerning the Microtel under the subject line, "Address from [City Official #1]."  In that email, City Official #2 requested that DHS staff again contact the defendant CRYSTAL CHEN for the purpose of discussing the Microtel's eligibility for an Emergency Shelter Contract.  In response, City Official #3 lamented, "I'm not clear what else you want me to do here.  We are aware of this site and have it on our hotel list. I defer to [staffer] and team on whether they want to push this up to [City Official #1] to approve to go to City Hall."  City Official #2 advised City Official #3 that City Official #2 had informed City Official #1 that "we've taken this as far as we can go.  So nothing left to do. Thanks for humoring me."

31.    Amid continued opposition within DSS, City Official #1 continued his efforts to steer an Emergency Shelter Contract to the Microtel consistent with the directive he

had received from the defendant FRANK V. CARONE.   On or about October 11, 2022, City Official #2 sent an email to DSS staff and provided the address for the Microtel and the contact information for the defendant CRYSTAL CHEN, stating that the Microtel had "come directly from the top . . . I know it is in LIC, but we should assume it is approved (confirmed with [City Official #1])."

32.    Later that day, a DHS staffer circulated the names of two Long Island City hotels for consideration for Emergency Shelter Contracts, neither of which was the Microtel. Consistent with the directive from the defendant FRANK V. CARONE, City Official #1 told DHS staff not to move forward on those locations, as the Microtel had been given priority.   The professional staff at DHS expressed renewed opposition, advising City Official #1 that the Microtel was "smaller than the other two" hotels proposed and could therefore house less migrant asylum seekers in a moment of crisis.   Another DHS staffer lamented that replacing the professional staff's recommendations with the Microtel "mean[t] a loss of 75 units," which would necessitate opening "more locations" to make up the difference.

33.    On or about October 20, 2022, DSS requested, and received, City Hall approval to award an Emergency Shelter Contract for the Microtel.   On or about November 1, 2022, the Office of the Agency Chief Contracting Officer for NYC executed a letter of intent to award an Emergency Shelter Contract for the Microtel.   The Microtel ultimately received $6,825,000 pursuant to Emergency Shelter Contracts, which inured to the financial benefit of the defendants YAN PO ZHU and CRYSTAL CHEN.

D.    The Sham Retainer, Bribe Payments, and Tax Avoidance Scheme

34.    After the defendant FRANK V. CARONE directed City Official #1 to steer an Emergency Shelter Contract to the Microtel despite opposition from staff at DSS, the

12

defendants YAN PO ZHU and CRYSTAL CHEN commenced making bribe payments to F. CARONE.   To conceal the criminal nature of the scheme, ZHU and CHEN disguised the bribe payments as legal fees and directed the payments to the Law Firm #2 Account, which was controlled by the defendant ANTHONY J. CARONE.

35.    In that regard, on or about October 14, 2022, Holding Company #2, an entity controlled by the defendant YAN PO ZHU, executed a document purporting to retain Law Firm #2 for assistance in obtaining an Emergency Shelter Contract for the Microtel (the "Sham Retainer Agreement").   The defendant CRYSTEL CHEN sent the Sham Retainer Agreement to the defendant ANTHONY J. CARONE.   The Sham Retainer Agreement specified a 12-month term, during which ZHU and CHEN would make monthly payments of $10,000 to Law Firm #2 for a total payment of $120,000.   Notably, A. CARONE did not inform his law partners at Law Firm #2 that ZHU had retained A. CARONE or Law Firm #2, nor did A. CARONE inform his law partners at Law Firm #2 that he was facilitating various cash payments from ZHU into the Law Firm #2 Account on behalf of the defendant FRANK V. CARONE and, in turn, funneling those payments back to F. CARONE in various ways.

36.    The following week, on or about October 21, 2022, the defendant CRYSTAL CHEN discussed the ongoing bribery scheme with Individual #1, an employee of the defendant YAN PO ZHU whose identity is known to the Grand Jury.   Individual #1 was responsible for wiring funds to the Law Firm #2 Account on behalf of ZHU and CHEN:[1]

> CHEN:    The boss completely trusts the two brothers.
>
>          . . .

---

[1]    The messages described herein between CHEN and Individual #1 were originally in Mandarin and have been translated into English in sum and substance.

Individual #1:     Isn't it just about giving 120,000?

. . .

CHEN:     In the end, it's all about money and giving the two brothers a way out.

Individual #1:     How much? 120k?

CHEN:     Its still 12

. . .

And they said that if there is a renewal, it will still be charged every month

. . .

He still said it was approved because of their contribution, no matter whose application it was.

. . .

Individual #1:     I got 120,000 yuan for no reason, and I will continue to blackmail you in the future.

CHEN:     Then the boss said, "if [Consultant #1's] application had been approved two weeks earlier, we would not have signed the 12th one last week."

Its all bullshit.

The two brothers got a bargain for nothing.   Then we begged them to accept it. Why…

37.     Consistent with the Sham Retainer Agreement and the defendant CRYSTAL CHEN's description of the scheme, CHEN and the defendant YAN PO ZHU directed a total of $120,000 to the Law Firm #2 Account as follows:

14

| Approximate Date | Payor | Wire Amount |
|---|---|---|
| October 14, 2022 | Holding Company #1 | $10,000.00 |
| November 10, 2022 | Holding Company #1 | $10,000.00 |
| December 8, 2022 | Holding Company #1 | $10,000.00 |
| February 24, 2023 | Holding Company #2 | $20,000.00 |
| March 10, 2023 | Holding Company #1 | $10,000.00 |
| April 11, 2023 | Holding Company #2 | $20,000.00 |
| May 8, 2023 | Holding Company #1 | $10,000.00 |
| June 16, 2023 | Holding Company #1 | $10,000.00 |
| July 20, 2023 | Holding Company #1 | $10,000.00 |
| September 21, 2023 | Holding Company #1 | $10,000.00 |

38.     The bribe payments deposited into the Law Firm #2 Account were comingled with legal fees from other clients that the defendant FRANK V. CARONE referred to the defendant ANTHONY J. CARONE while F. CARONE served as Chief of Staff.   A. CARONE deposited those client fees into the once-dormant Law Firm #2 Account and then steered the majority of the client fees to F. CARONE.   F. CARONE and A. CARONE used this financial arrangement to convey and conceal the bribe payments made to F. CARONE by the defendants YAN PO ZHU and CRYSTAL CHEN.

39.     In or about and between October 2022 and April 2023, the defendants FRANK V. CARONE and ANTHONY J. CARONE used most of the funds deposited into the Law Firm #2 Account for F. CARONE's personal benefit.   Specifically, although neither F. CARONE nor his personal assistant was affiliated with Law Firm #2, F. CARONE and A. CARONE repeatedly directed F. CARONE's personal assistant to transfer funds from the Law Firm #2 Account to F. CARONE's personal credit card account, which he used predominantly

for his personal expenses, including charges for travel, dining, fitness memberships, clothing purchases, groceries, and the like.

40.     Neither the defendant ANTHONY J. CARONE, nor Law Firm #2, nor the defendant FRANK V. CARONE reported the bribe payments to the Internal Revenue Service ("IRS") or any other government agency.   Nor did they report hundreds of thousands of dollars of other client fees paid into the Law Firm #2 Account as income to the IRS or any other government agency.

41.     The defendant FRANK V. CARONE did not report any of the funds that he received from the Law Firm #2 Account to the NYC Conflicts of Interest Board during the period he served as Chief of Staff, as he was required to do.

42.     After the defendant FRANK V. CARONE resigned as Chief of Staff and returned to the private sector, he and the defendant ANTHONY J. CARONE changed the method they used to conceal F. CARONE's receipt of the bribe payments.   In or about April 2023, A. CARONE began writing checks from the Law Firm #2 Account—which included the proceeds of the bribe payments made by the defendants YAN PO ZHU and CRYSTAL CHEN— to Law Firm #1, which F. CARONE owned and controlled.   F. CARONE did not provide Law Firm #2, ZHU, or CHEN with legitimate services that would have entitled F. CARONE to such payments, nor did he disclose to the NYC Conflicts of Interest Board that he performed services for any clients doing business before the City, as he was required to do.

E.     Breakdown of the Bribery Arrangement

43.     On or about September 21, 2023, the defendants YAN PO ZHU and CRYSTAL CHEN made the last bribe payment owed to the defendant FRANK V. CARONE under the Sham Retainer Agreement.

44.     On or about November 20, 2023, the defendant CRYSTAL CHEN emailed the defendant ANTHONY J. CARONE, requesting to terminate the Sham Retainer Agreement.   By that time, the defendant YAN PO ZHU and CHEN had made the equivalent of 12 payments totaling $120,000, as called for in the Sham Retainer Agreement.   Nonetheless— and despite no services having been provided for October 2023 or November 2023—A. CARONE responded, "Please immediately remit the fees for October and November and then we will consider this matter terminated."

45.     The next day, no further payments having been made, the defendant FRANK V. CARONE texted the defendant YAN PO ZHU and stated, "I need to see you."

46.     On or about December 25, 2023, the defendants FRANK V. CARONE and YAN PO ZHU exchanged a series of text messages regarding the bribe payments. Consistent with the defendant ANTHONY J. CARONE's stated belief that additional payments were owed, F. CARONE informed ZHU that he was "not happy about something" and would "not discuss[] [any future deals] until past is worked out."   In response, referring to the bribe payments made under the Sham Retainer Agreement, ZHU stated that he had "asked my partners to pay you for a year."

F.     Obstruction of the Criminal Investigation

47.·     By spring 2024, the defendants FRANK V. CARONE and ANTHONY J. CARONE had become aware of a federal Grand Jury investigation.   To conceal the illegal nature of the bribery scheme described herein and otherwise obstruct the investigation, F. CARONE and A. CARONE fabricated evidence to create the impression that the payments from Law Firm #2 to F. CARONE's personal credit card account and to Law Firm #1 were personal loans made by A. CARONE to F. CARONE.   As part of that scheme to obstruct, in

approximately July 2024, F. CARONE and A. CARONE created and executed a document purporting to be a promissory note, which they backdated to January 2022, and subsequently provided to federal investigators in October 2025.

<u>COUNT ONE</u>
(Conspiracy to Commit Offenses Against the United States)

48.     The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

49.     In or about and between June 2022 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU, also known as "Andy Zhu," together with others, did knowingly and willfully conspire:

(a)     for FRANK V. CARONE, being an agent of a local government, to wit: the City of New York, to corruptly solicit and demand for the benefit of F. CARONE and ANTHONY J. CARONE, and accept and agree to accept, one or more things of value from YAN PO ZHU, also known as "Andy Zhu," and CRYSTAL CHEN, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of the City of New York involving things of value of $5,000 or more, while the City of New York was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, contrary to Title 18, United States Code, Section 666(a)(1)(B);

(b)     for YAN PO ZHU, also known as "Andy Zhu," and CRYSTAL CHEN to corruptly give, offer, or agree to give anything of value to FRANK V. CARONE and ANTHONY J. CARONE, with intent to influence or reward F. CARONE, being an agent of a local government, to wit: the City of New York, in connection with business and one or more

transactions and series of transactions of the City of New York involving things of value of $5,000 or more, while the City of New York was in receipt of, in any one year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, contrary to Title 18, United States Code, Section 666(a)(2); and

(c)    to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of one or more unlawful activities, to wit: Bribery in the Third Degree, in violation of New York Penal Law Section 200.00; Bribe Receiving in the Third Degree, in violation of New York Penal Law Section 200.10; and Criminal Liability for Conduct of Another, in violation of New York Penal Law Section 20.00, and thereafter to perform acts to distribute the proceeds of such unlawful activity and to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3)(A).

50.    In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU, also known as "Andy Zhu," together with others, did commit and cause the commission of, among others, the following overt acts:

OVERT ACTS

a.    On or about September 19, 2022, the defendant FRANK V. CARONE and the defendant YAN PO ZHU, also known as "Andy Zhu," exchanged text messages in furtherance of steering an Emergency Shelter Contract to the Microtel.

b.      On or about September 26, 2022, the defendant YAN PO ZHU, also known as "Andy Zhu," sent a text message to the defendant FRANK V. CARONE soliciting assistance in obtaining an Emergency Shelter Contract for the Microtel.

c.      On or about October 14, 2022, the defendant CRYSTAL CHEN transmitted via email to the defendant ANTHONY J. CARONE the signed Sham Retainer Agreement.

d.      On or about October 14, 2022, the defendant CRYSTAL CHEN sent text messages to Individual #1 about the bribe payments to the defendants FRANK V. CARONE and ANTHONY J. CARONE.

e.      On or about the following dates, the defendants YAN PO ZHU, also known as "Andy Zhu," and CRYSTAL CHEN caused the following bribe payments to be made to the Law Firm #2 Account:

| Approximate Date | Payor | Wire Amount |
| --- | --- | --- |
| October 14, 2022 | Holding Company #1 | $10,000.00 |
| November 10, 2022 | Holding Company #1 | $10,000.00 |
| December 8, 2022 | Holding Company #1 | $10,000.00 |
| February 24, 2023 | Holding Company #2 | $20,000.00 |
| March 10, 2023 | Holding Company #1 | $10,000.00 |
| April 11, 2023 | Holding Company #2 | $20,000.00 |
| May 8, 2023 | Holding Company #1 | $10,000.00 |
| June 16, 2023 | Holding Company #1 | $10,000.00 |
| July 20, 2023 | Holding Company #1 | $10,000.00 |
| September 21, 2023 | Holding Company #1 | $10,000.00 |

f.        On or about October 21, 2022, the defendant CRYSTAL CHEN sent text messages to Individual #1 about the bribe payments to the defendants FRANK V. CARONE and ANTHONY J. CARONE.

g.        On or about November 10, 2022, the defendants YAN PO ZHU, also known as "Andy Zhu," and CRYSTAL CHEN made a bribe payment to the Law Firm #2 Account, after which the defendants FRANK V. CARONE and ANTHONY J. CARONE caused F. CARONE's personal assistant to electronically transfer funds from the Law Firm #2 Account to F. CARONE's personal credit card account.

h.        On or about December 12, 2022, the defendants FRANK V. CARONE and ANTHONY J. CARONE caused F. CARONE's personal assistant to electronically transfer funds comprised in part of the proceeds of the bribe payments made by the defendants YAN PO ZHU, also known as "Andy Zhu," and CRYSTAL CHEN from the Law Firm #2 Account to F. CARONE's personal credit card account.

i.        On or about April 12, 2023, the defendant ANTHONY J. CARONE wrote a check comprised in part of the proceeds of the bribe payments made by the defendants YAN PO ZHU, also known as "Andy Zhu," and CRYSTAL CHEN to Law Firm #1 which the defendant FRANK V. CARONE owned and controlled.

j.        On or about December 25, 2023, the defendant FRANK V. CARONE and the defendant YAN PO ZHU, also known as "Andy Zhu," exchanged text messages in furtherance of the bribery scheme.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

21

## COUNT TWO
(Federal Program Bribery)

51.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

52.    In or about and between June 2022 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FRANK V. CARONE, being an agent of a local government, to wit: the City of New York, together with others, did knowingly, intentionally and corruptly solicit and demand for the benefit of F. CARONE and ANTHONY J. CARONE, and accept and agree to accept, one or more things of value, to wit: United States currency, from one or more persons, to wit: CRYSTAL CHEN and YAN PO ZHU, also known as "Andy Zhu," intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of the City of New York involving things of value of $5,000 or more, while the City of New York was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance.

(Title 18, United States Code, Sections 666(a)(1)(B), 2 and 3551 et seq.)

## COUNT THREE
(Federal Program Bribery)

53.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

54.    In or about and between June 2022 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CRYSTAL CHEN and YAN PO ZHU, also known as "Andy Zhu," together with

others, did knowingly, intentionally and corruptly give, offer, and agree to give one or more things of value, to wit: United States currency, to one or more persons, to wit: ANTHONY J. CARONE and FRANK V. CARONE, with intent to influence or reward F. CARONE in his official capacity as an agent of the City of New York, in connection with business and one or more transactions and series of transactions of the City of New York involving things of value of $5,000 or more, while the City of New York was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance

(Title 18, United States Code, Sections 666(a)(2), 2 and 3551 et seq.)

## COUNT FOUR
### (Use of Interstate Facilities to Commit Bribery)

55.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

56.    In or about and between June 2022 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU, also known as "Andy Zhu," together with others, did knowingly and intentionally use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of one or more unlawful activities, to wit: Bribery in the Third Degree, in violation of New York Penal Law Section 200.00; Bribe Receiving in the Third Degree, in violation of New York Penal Law Section 200.10; and Criminal Liability for Conduct of Another, in violation of New York Penal Law Section 20.00, and thereafter performed and attempted to perform acts to distribute the

proceeds of such unlawful activity and to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3)(A), 2 and 3551 et seq.)

## COUNT FIVE
(Conspiracy to Commit Honest Services Wire Fraud)

57.     The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

58.     In or about and between June 2022 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU, also known as "Andy Zhu," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud and deprive the citizens of the City of New York and the government of the City of New York of their intangible right to the honest services of F. CARONE through bribery and kickbacks, to wit: one or more payments to F. CARONE, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS SIX THROUGH EIGHT
(Honest Services Wire Fraud)

59.     The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

60.     On or about the dates set forth below, those dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY J.

CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU, also known as "Andy Zhu," together with others, did knowingly and intentionally devise a scheme and artifice to defraud and deprive the citizens of the City of New York and the government of the City of New York of their intangible right to the honest services of F. CARONE through bribery and kickbacks, to wit: one or more payments to F. CARONE, and for the purpose of executing such scheme and artifice, the defendants, together with others, transmitted and caused to be transmitted, by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds, as set forth below:

| **Count** | **Approximate Date** | **Payor** | **Wire Amount** |
|---|---|---|---|
| SIX | October 14, 2022 | Holding Company #1 | $10,000.00 |
| SEVEN | November 10, 2022 | Holding Company #1 | $10,000.00 |
| EIGHT | December 8, 2022 | Holding Company #1 | $10,000.00 |

(Title 18, United States Code, Sections 1343, 1346, 2 and 3551 et seq.)

## COUNT NINE
### (Money Laundering Conspiracy)

61.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

62.    In or about and between June 2022 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, and YAN PO ZHU, also known as "Andy Zhu," together with others, did knowingly and intentionally conspire to: (a) conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the electronic transfer and delivery of United States currency, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit:

(i) federal program bribery, as charged in Counts Two and Three, in violation of Title 18, United States Code, Section 666; (ii) use of interstate facilities to commit bribery, in violation of Title 18, United States Code, Section 1952, as charged in Count Four; and (iii) honest services wire fraud as charged in Counts Six through Eight, in violation of Title 18, United States Code, Sections 1343 and 1346, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity and knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (b) engage in one or more monetary transactions, to wit: the electronic transfer and delivery of United States currency, in and affecting interstate commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: (i) federal program bribery, as charged in Counts Two and Three, in violation of Title 18, United States Code, Section 666; (ii) use of interstate facilities to commit bribery, in violation of Title 18, United States Code, Section 1952, as charged in Count Four; and (iii) honest services wire fraud as charged in Counts Six through Eight, in violation of Title 18, United States Code, Sections 1343 and 1346, contrary to Title 18, United States Code, Section 1957(a) and 1957(b).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT TEN
(Obstruction of Justice)

63.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

64.    In or about and between July 2024 and October 2025, within the Eastern District of New York and elsewhere, the defendants ANTHONY J. CARONE and FRANK V. CARONE, together with others, did knowingly, intentionally and corruptly obstruct, influence, and impede, and attempt to obstruct, influence and impede, an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT ELEVEN
(Subscribing to a False Tax Return)

65.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

66.    On or about March 14, 2023, within the Eastern District of New York and elsewhere, the defendant ANTHONY J. CARONE did knowingly and willfully make and subscribe a false and fraudulent U.S. Individual Income Tax Returns, Form 1040, for the tax year 2022, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the IRS, which tax return A. CARONE did not believe to be true and correct as to one or more material matters, in that A. CARONE falsely underreported his total income, whereas A. CARONE then and there well knew that his total income was greater than the reported amount.

(Title 26, United States Code, Section 7206(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT TWELVE
(Subscribing to a False Tax Return)

67.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

68.    On or about March 14, 2023, within the Eastern District of New York and

27

elsewhere, the defendant ANTHONY J. CARONE did knowingly and willfully make and subscribe a false and fraudulent U.S. Return of Partnership Income Tax Returns, Form 1065, for Law Firm # 2 for the tax year 2022, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the IRS, which tax return A. CARONE did not believe to be true and correct as to one or more material matters, in that A. CARONE falsely underreported Law Firm #2's gross receipts and ordinary income, whereas A. CARONE then and there well knew and believed that Law Firm #2's gross receipts and ordinary income were greater than the reported amounts.

(Title 26, United States Code, Section 7206(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT THIRTEEN
(Subscribing to a False Tax Return)

69.    The allegations contained in paragraphs one through 47 are realleged and incorporated as if fully set forth in this paragraph.

70.    On or about October 16, 2023, within the Eastern District of New York and elsewhere, the defendant FRANK V. CARONE did knowingly and willfully make and subscribe a false and fraudulent U.S. Individual Income Tax Returns, Form 1040, for the tax year 2022, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the IRS, which tax return F. CARONE did not believe to be true and correct as to one or more material matters, in that F. CARONE falsely underreported his total income, whereas F. CARONE then and there well knew that his total income was greater than the reported amount.

(Title 26, United States Code, Section 7206(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH EIGHT AND TEN

71. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Eight and Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

72. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT NINE

73. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Nine, the government will seek forfeiture in

29

accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

74.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
/s/
FOREPERSON

_____
MICHAEL G. CONSIDINE
FIRST ASSISTANT UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK