UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------- X

UNITED STATES OF AMERICA,

v.

ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU,

Defendants.

-------------------------------------- X

Docket No. 1:26-cr-00177 (KAM)

**DEFENDANT YAN PO ZHU'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS**

This memorandum is submitted in support of Defendant Yan Po Zhu's ("Zhu") motion to suppress statements made to federal law enforcement during the course of a search warrant executed at his home on March 14, 2025. The statements were made while Zhu was constructively in custody, in the absence of any *Miranda* warnings, and *after* Zhu repeatedly had requested a lawyer. As set forth below, the defense respectfully submits that the egregiousness of the government's conduct requires suppression of the statements.

## BACKGROUND

Early in the morning of March 14, 2025, approximately twenty armed federal agents, including members of an FBI Swat Team, executed a search warrant at Zhu's home on Long Island where he resides with his wife and two minor children. All of the agents were armed, including, notably, the members of the Swat Team, at least two of whom confronted Zhu at the entrance of his home bearing long rifles with lasers trained on his chest. Zhu was informed that he was not under arrest but the agents were executing a search warrant. Zhu was removed from his home and

placed in one of the agents' cars, separate from his wife and two children who were placed in another car.[1]

At an undetermined time during the search, the agents attempted to interview Zhu. The resulting colloquy between Zhu and the agents appears to not have been recorded notwithstanding the agents' presumed capability to have done so.

The agents' statement that Zhu was not under arrest was flatly contradicted by the surrounding circumstances—notably, the overwhelming show of force by a number of armed agents, the gunpoint confrontation of Zhu at the door of his home, and the fact that Zhu was never told that he was free to leave. Compounding matters, Zhu immediately and repeatedly invoked his right to counsel.

Thwarted by Zhu's clear invocation of his right to counsel, the agents resorted to subterfuge: after—according to their account—disclaiming any intention to question him, the agents confronted Zhu with what they euphemistically described as a summary of the evidence underlying the search warrant. In fact, the "summary" was a series of accusations that Zhu had bribed his co-defendant Frank Carone, replete with surveillance photographs, that only could have been intended to goad him into making a response. The agents' gambit succeeded, and Zhu made a series of statements that principally denied the agents' allegations.

[1] The facts in support of Zhu's motion are based on an FBI FD-302, dated April 8, 2025, and Zhu's affidavit. The former is annexed as Exhibit A to this motion but submitted under seal with the Court's permission (*see* Dkt. No. 113.) Zhu's affidavit is annexed as Exhibit B. The government also produced in discovery a second report memorializing a second statement purportedly made during his transport to court after his arrest earlier this year. The defense seeks to suppress only the 2025 statements.

## ARGUMENT

### I. Zhu's Statements Were Taken While He Was Constructively Detained and After He Had Invoked His Right to Counsel.

It is hornbook law that once a suspect is placed in custody, law enforcement must administer the constitutionally required *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). In the absence of a formal arrest, courts have applied an objective multi-factor test to determine whether, under the circumstances, an individual felt he was free to leave. *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004) (citation omitted) (applying a two-step inquiry: (1) whether a reasonable person would have believed he was free to leave; and if not, (2) whether the restrictions on his freedoms were comparable to those associated with formal arrest); *see also United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (citing several factors courts may analyze to determine custody, including "(1) the interrogation's duration; (2) its location…; (3) whether the suspect volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion.") (quoting *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011)).

Of particular relevance here are the number of law enforcement officers, whether they were armed, and whether the suspect was directly advised that he was not free to leave. *See United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992) (explaining that in the absence of actual arrest, an interrogation is custodial if law enforcement affirmatively conveys the message that the individual is not free to leave).

*Faux* is particularly instructive. There, between ten and fifteen agents executed a search warrant at the home of the defendant who was under investigation for insurance fraud. The

defendant was questioned in her dining room and her movements were limited but she was never told if she could leave or not. 828 F.3d at 138. In reversing the District Court's decision to suppress her statement, the Second Circuit expressed its unease with the number of agents present at the search as well as the limitations on her movements within her home but ultimately reversed the District Court on the ground that agents never expressly told her that she was not free to leave or openly exhibited their firearms. *Id*.

Multiple factors distinguish this case from *Faux*. At the outset, it is undisputed that no *Miranda* warnings were administered to Zhu and that Zhu invoked his right to counsel on multiple occasions. Neither of those factors was present in *Faux*, and indeed, the District Court made no specific finding that the defendant had requested a lawyer. *Id*. at 134. Moreover, while the Circuit Court in *Faux* expressed "considerable pause" with the number of agents present at the search of Faux's home (between ten and fifteen agents), there was no evidence that they had brandished their weapons. *Id.* at 133. The Circuit's concerns no doubt would be heightened by the facts of this case where entry into Zhu's home was effected by approximately twenty federal agents, led by heavily armed members of the FBI's Swat Team who trained their weapons directly on Zhu at the entry of his home. The agents' self-serving statement that Zhu was not under arrest shrugs off the impact of having laser dots from what likely were automatic rifles pointed squarely at his chest. Finally, and dispositively, while members of Zhu's family, including his wife and two minor children, were allowed to leave, Zhu was never told that he could do so. Taken collectively, these facts lead to the inexorable conclusion that, measured by an objective standard, a reasonable person in Zhu's position could not believe that he was free to terminate the encounter.

2. **The Agents Manipulated Zhu into Making Statements Despite His Repeated Requests to Speak to a Lawyer**

As the Supreme Court has squarely held, whether law enforcement's interactions with a suspect constitute questioning is a fact specific inquiry that turns on whether the exchange was designed to elicit a response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

In the decades since, courts in this Circuit have grappled with this issue and drawn a distinction between routine administrative questioning and questioning that, viewed in context, is reasonably likely to elicit an incriminating response. For example, in *United States v. Hill*, the Court explained that routine inquiries concerning a suspect's identify and basic administrative information generally fall within the pedigree exception and do not constitute interrogation. No. 12-CR-214 KAM, 2013 WL 3243657, at *7 (E.D.N.Y. June 26, 2013), *aff'd*, 658 F. App'x 600 (2d Cir. 2006). Additionally, even after a suspect has invoked the right to counsel, courts have held that no impermissible interrogation occurs when the suspect initiates further discussion by seeking information from law enforcement and subsequently makes an incriminating statement in the course of that exchange. *See United States v. Guido*, 704 F.2d 675, 677 (2d Cir. 1983); *see also United States v. Cota*, 953 F.2d 753, 759 (2d Cir. 1992). By contrast, *United States v. Augustus* illustrates the other side of that line. There, the court found that police officer's questioning of the defendant following his arrest and in the absence of *Miranda* warnings constituted interrogation where it served no legitimate administrative purpose and instead was designed to elicit an incriminating response. No. 10-CR-629, 2012 WL 3241190, at *8 (E.D.N.Y. Aug. 6, 2012). Thus, the inquiry turns not on whether officers themselves characterized their questions as administrative or routine, but rather on the nature and the circumstances of the questioning and whether it was reasonably likely to elicit an incriminating response.

The Second Circuit's decision in *United States v. Szymaniak*, 934 F.2d 434 (2d Cir. 1991), illustrates the type of post-invocation conduct that crossed the line into interrogation. There, after Szymaniak had invoked his right to counsel and to remain silent, the agent did not terminate his efforts to obtain a statement. *Id*. at 439. Instead, the agent repeatedly returned to Szymaniak to elicit a statement from him. *Id*. On one such occasion, after obtaining information from another suspect, the agent returned to Szymaniak, confronted him with that information, and again sought a statement. *Id*. The Second Circuit held that the agent's conduct constituted interrogation because it was calculated to elicit an incriminating response. *Id*. at 438-39.

The circumstances here distinguish this case from *Hill* and *Guido* and closely parallel those in *Szymaniak*. The agents neither sought routine administrative or pedigree information from Zhu nor provided substantive information in response to a request from him. Rather, after Zhu clearly and repeatedly had invoked his right to counsel, the agents confronted him with incriminating evidence they claimed to have gathered during their investigation. Of equal significance, here, as in *Szymaniak*, law enforcement rather than the suspect initiated the post-invocation exchange. Rather than honoring Zhu's unambiguous invocation of his right to counsel, the agents resorted to gamesmanship. Purporting to disclaim any interest in questioning him, the agents proceeded to do precisely that. The FBI report's claim that the agents intended only to provide Zhu a summary of the evidence against him in support of the search warrant is risible as there is no evidence that Zhu requested such a summary, which in any event the agents were under no obligation to provide, especially given that the affidavit in support of the warrant was still under seal at that time. The inescapable inference to be drawn is that the agents intended their actions to goad Zhu into making a response, actions of which succeeded.

## CONCLUSION

For the reasons set forth above, the defense respectfully submits that Zhu's statements during the search of his home should be suppressed or, in the alternative, a hearing should be held to determine their admissibility.

Dated: New York, New York
October 2, 2026

Respectfully submitted,

**COZEN O'CONNOR**

/s/ *J. Bruce Maffeo*
J. Bruce Maffeo
3 WTC, 175 Greenwich Street
55th Floor
New York, New York 10007
Phone: (212) 883-4951
Phone: (202) 363-2526
Email: jbmaffeo@cozen.com

**STEPHEN P. SCARING P.C.**
Stephen P. Scaring
666 Old Country Road, Suite 501
Garden City, New York 11530
Phone: (516) 683-8500
Email: sscaring@scaringlaw.com

*Attorneys for Defendant Yan Po Zhu*

Deanna Clayton, Esq. (of counsel)

# Exhibit A

## To Be Filed Under Seal

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, v. ANTHONY J. CARONE, FRANK V. CARONE, CRYSTAL CHEN, AND YAN PO ZHU, Defendants. | : | No. 1:26-cr-00177 (KAM) |

**AFFIDAVIT OF DEFENDANT YAN PO ZHU IN SUPPORT OF HIS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS**

Yan Po Zhu, being duly sworn, deposes and says:

1. I am a defendant in the above-captioned matter and submit this affidavit in support of a motion to suppress certain statements that I made to federal agents during the course of a search executed at my home on March 14, 2025.

2. Early that morning, I was awakened by a telephone call from federal agents who were outside the gate leading to my home. At the time, I was asleep as were my wife and two minor children with whom I live.

3. I opened the front door of my home where I was confronted by two or three federal agents who were armed with long guns with lasers pointed at my chest. I was told to step forward to the agents, frisked and told that the agents were not here to arrest me but to execute a search warrant. The agents directed me to sit in one of their cars that was parked in my driveway. I was separated from my wife and two children whom the agents placed in another one of their cars.

4. Shortly after, the agents took me from my car and brought me back into my home and directed me to open a safe, which I did. I recall that in total there were more than a dozen agents who either were participating in the search of my home, including the agents carrying long rifles, or who remained outside during the search.

5. Two agents, who were visibly carrying sidearms, took me to my dining room. While seated at my dining room table, the two agents told me that they were investigating a bribery case and showed me several photographs of me and Frank Carone. They asked me how I knew Frank Carone at which time I requested a lawyer, a request that I repeated several times. The agents never honored my request for an attorney and instead continued to speak with me.

6. At some point, my wife asked the agents to allow her to take my two children to school, which the agents allowed her to do. The agents never told me that I could or couldn't leave, but as I had never experienced a similar situation, I believed that I was not free to.

I declare under penalty of perjury that foregoing is true and correct to the best of my knowledge and belief.

Dated: 10/1/2026

By: ______________________
Yan Po Zhu